UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAGIN REYES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DELPHI TECHNOLOGIES PLC, TIMOTHY M. MANGANELLO, RICHARD F. DAUCH, ROBIN J. ADAMS, JOSEPH S. CANTIE, NELDA J. CONNORS, GARY L. COWGER, DAVID S. HAFFNER, HELMUT LEUBE, HARI N. NAIR, and MARYANN WRIGHT,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Magin Reyes ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.　Plaintiff brings this action against Delphi Technologies PLC ("Delphi" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §

240.14a-9, arising out of their attempt to sell the Company to BorgWarner Inc. ("BorgWarner") (the "Proposed Transaction").

2. On January 28, 2020, the Company announced that it had entered into a Transaction Agreement, which was subsequently amended on May 6, 2020 (as amended, the "Merger Agreement") pursuant to which each Delphi stockholder will receive 0.4307 shares of BorgWarner common stock for each share of Delphi common stock they own.

3. On May 26, 2020, defendants filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Delphi's, BorgWarner's, and the pro forma company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in connection with its fairness opinion; and (iii) the background of the Proposed Transaction. Accordingly, without additional information the Proxy is materially misleading in violation of federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material

information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Delphi operates a Customer Technical Center in Auburn Hills, Michigan, which is located in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Delphi.

9. Defendant Delphi is a Jersey corporation with its principal executive offices located at One Angel Court, 10th Floor, London, EC2R 7HJ, United Kingdom and its Customer Technical Center located at 3000 University Drive, Auburn Hills, Michigan 48326. Delphi's common stock trades on the New York Stock Exchange under the ticker symbol "DLPH."

10. Defendant Timothy M. Manganello ("Manganello") is Chairman of the Board and has served as a director of the Company since 2015. Defendant Manganello previously served in various roles with BorgWarner since 1999.

11. Defendant Richard F. Dauch has served as Chief Executive Officer and a director of the Company since 2019.

12. Defendant Robin J. Adams ("Adams") has served as a director of the Company since 2017. Defendant Adams previously served in various roles with BorgWarner since 2004.

13. Defendant Joseph S. Cantie has served as a director of the Company since 2015.

14. Defendant Nelda J. Connors has served as a director of the Company since 2017.

15. Defendant Gary L. Cowger has served as a director of the Company since 2009.

16. Defendant David S. Haffner has served as a director of the Company since 2017.

17. Defendant Helmut Leube has served as a director of the Company since 2017.

18. Defendant Hari N. Nair has served as a director of the Company since 2017.

19. Defendant MaryAnn Wright has served as a director of the Company since 2017.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party BorgWarner is a Delaware corporation with its principal executive offices located at 3850 Hamlin Road, Auburn Hills, Michigan 48326. BorgWarner's common stock trades on the New York Stock Exchange under the ticker symbol "BWA."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

22. Delphi develops, designs and manufactures vehicle propulsion systems that optimize engine performance, increase vehicle efficiency, reduce emissions,

improve driving performance, and support electrification. Delphi supplies advanced technologies and solutions for propulsion systems to original equipment manufacturers of light vehicles (passenger cars, trucks, vans and sport-utility vehicles) and commercial vehicles (light-duty, medium-duty and heavy-duty trucks, commercial vans, buses and off-highway vehicles).

23. Delphi operates in four segments: Fuel Injection Systems, Powertrain Products, Electrification & Electronics, and Aftermarket. The Fuel Injection Systems segment includes gasoline and diesel fuel injection components and systems. The Powertrain Products segment includes a variety of products for traditional combustion and hybrid electric vehicles. The Electrification & Electronics segment includes engine and transmission control modules and power electronics. Through the Aftermarket segment, Delphi sells products and services, including those from its other three segments, to independent aftermarket customers and original equipment service customers.

24. On January 28, 2020, Delphi announced the Proposed Transaction, stating, in relevant part:

> AUBURN HILLS, Mich. and LONDON, Jan. 28, 2020 -- BorgWarner Inc. (NYSE: BWA) and Delphi Technologies PLC (NYSE: DLPH) today announced that they have entered into a definitive transaction agreement under which BorgWarner will acquire Delphi Technologies in an all-stock transaction that values Delphi Technologies' enterprise value at approximately $3.3 billion.

The acquisition would strengthen BorgWarner's power electronics products, capabilities and scale. Combining with Delphi Technologies is consistent with BorgWarner's evolution towards the propulsion market of the future and would enable BorgWarner to maintain flexibility across combustion, hybrid, and electric propulsion (C-H-E).

Under the terms of the agreement, which has been approved by the boards of directors of both companies, Delphi Technologies stockholders would receive a fixed exchange ratio of 0.4534 shares of BorgWarner common stock per Delphi Technologies share. Upon closing of the transaction, current BorgWarner stockholders are expected to own approximately 84% of the combined company, while current Delphi Technologies stockholders are expected to own approximately 16%.

In fiscal year 2019, BorgWarner and Delphi Technologies estimate that they generated $10.17 billion and $4.36 billion of net sales, respectively. Following the close of the transaction, the combined company is expected to be one of the leading pure-play propulsion companies globally, serving light and commercial vehicle manufacturers and the aftermarket. The combined company would offer a unique, more comprehensive portfolio of industry-leading propulsion products and systems across combustion, hybrid and electric, resulting in greater content per vehicle relative to BorgWarner today.

"This exciting transaction represents the next step in BorgWarner's balanced propulsion strategy, strengthening our position in electrified propulsion as well as our combustion, commercial vehicle and aftermarket businesses," said Frédéric Lissalde, President and CEO of BorgWarner. "Delphi Technologies will bring proven leading power electronics technologies, talent and scale that will complement our hybrid and electric vehicle propulsion offerings. As a combined company, we look forward to delivering enhanced solutions to our customers while driving increased value for our stockholders."

Mr. Lissalde added, "We have a great deal of respect for Delphi Technologies' team around the world and look forward to welcoming them to BorgWarner. We are confident that together we will be able to move faster to address market trends toward electrification."

"This is a compelling transaction that we are confident delivers clear benefits to our stakeholders," said Richard F. Dauch, CEO of Delphi Technologies. "Delphi Technologies' portfolio is highly complementary to BorgWarner's, and together we plan to create a pioneering propulsion technologies company uniquely equipped to serve OEMs and aftermarket customers around the world. BorgWarner's team shares our focus on addressing today's and tomorrow's challenges, and the combination will create exciting opportunities for our employees. We also expect our stockholders will benefit from the opportunity to participate in the future growth and upside potential of the combined company."

***

**Management and Headquarters**

Following the closing of the transaction, the combined company will be led by Frédéric Lissalde, BorgWarner's President and CEO, and Kevin Nowlan, BorgWarner's CFO, and will operate as BorgWarner. The combined company will be headquartered in Auburn Hills, Michigan.

**The Proxy Misleads Delphi Stockholders by Omitting Material Information**

25.   On March 11, 2020, defendants filed the materially misleading and incomplete Proxy with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) Delphi's, BorgWarner's and the pro forma company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Goldman, in connection with its fairness opinion; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning the Financial Projections*

26. The Proxy omits material information regarding Delphi's, BorgWarner's, and the pro forma company's financial projections.

27. In connection with the Company's financial projections, the Proxy sets forth that on July 14, 2019, "the Board instructed Company management to prepare preliminary financial projections for the Company for 2019 through 2023 (the "preliminary financial projections") for discussion at an upcoming Board meeting . . . ." Proxy at 52. These preliminary projections were then utilized by Goldman in preparing its preliminary financial analyses that were presented to the Board at the July 24 and July 25, 2019 Board meeting. *Id*. at 53.

28. On August 5, 2019, "Company management presented [to the Board] an updated draft of the preliminary financial projections" (*id*. at 54), which Goldman then utilized at the August 5 Board meeting and which were provided to BorgWarner on August 29, 2019. *Id*.

29. On October 10, 2019, "Company management [] reviewed for the Committee its updates to the preliminary financial projections shared with BorgWarner in August (the 'October Projections') . . . . *Id.* at 55. Goldman provided the October Projections to BorgWarner's financial advisor on October 15, 2019. *Id*.

30. Then, "[o]n December 6, 2019, Company management updated its 2019 to 2023 financial projections (the 'December Projections'), which were shared with representatives of Goldman Sachs, BorgWarner and BofA Securities." *Id.* at

58. At a December 10, 2019 Board meeting, "[r]epresentatives of Goldman Sachs also reviewed their updated financial analyses based on the December Projections." *Id.*

31. The Proxy, however, fails to set forth the Company's preliminary financial projections utilized by Goldman at the July 24 and July 25, 2019 Board meeting, the revised preliminary financial projections utilized by Goldman at the August 5, 2019 Board meeting and provided to BorgWarner on August 29, 2019, the October Projections utilized by Goldman and provided to BorgWarner on October 15, 2019, and the December Projections provided to BorgWarner on December 6, 2019 and utilized by Goldman at the December 10, 2019 Board meeting.

32. On January 17, 2020, Company management provided Goldman with the Company's actual financial results for the fiscal year ending 2019 and its projections for 2020 to 2023 (collectively, the "January Company Projections"). According to the Proxy, from March 23, 2020 to March 28, 2020, the Company provided BorgWarner with "an updated financial outlook of the Company for fiscal year 2020, which projected a reduction in the Company's 2020 adjusted EBITDA of between 22% and 62% relative to the January Company Projections[.]" *Id.* at 64. On April 20, 2020, the Company provided BorgWarner with "a further updated financial outlook of the Company for fiscal year 2020, reflecting actual financial results for the quarter ended March 31, 2020 and additional refinements related to

the potential impact of the COVID-19 pandemic on the Company's business through the end of fiscal year 2020." *Id.* at 65. The Proxy fails, however, to disclose Company management's respective updated financial outlooks for the Company.

33. In connection with BorgWarner's and the combined company's financial projections, the Proxy sets forth:

> In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:
>
> * * *
>
> - **certain updated internal financial analyses and forecasts** for Delphi Technologies prepared by its management, **and for BorgWarner prepared by its management and certain updated financial analyses and forecasts for BorgWarner pro forma for the consummation of the transaction prepared by the management of Delphi Technologies, in each case, as approved for Goldman Sachs' use by Delphi Technologies**, which are referred to as the "Forecasts," and certain updated operating synergies projected by the management of Delphi Technologies to result from the transaction, as approved for Goldman Sachs' use by Delphi Technologies, which are referred to as the "Synergies."

*Id.* at 73 (emphasis added). The Proxy, however, fails to disclose (i) the updated internal financial analyses and forecasts for BorgWarner prepared by its management; and (ii) certain updated financial analyses and forecasts for BorgWarner pro forma for the consummation of the transaction prepared by the management of Delphi.

34. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

35. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Transaction," "Delphi Technologies Unaudited Prospective Financial Information," and "Opinion of Goldman Sachs."

***Material Omissions Concerning Goldman's Financial Analyses***

36. The Proxy describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Delphi's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Delphi, the Proxy fails to disclose: (i) the estimated terminal year EBITDA of Delphi; and (ii) the individual inputs and assumptions underlying the discount rates of 8.00% to 9.00%.

38. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of Delphi, the Proxy fails to disclose the individual inputs and assumptions underlying the discount rate of 8.9%.

39. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of BorgWarner, the Proxy fails to disclose: (i) the estimates of unlevered free cash flow for BorgWarner for the last three quarters of 2020 and the years 2021 through 2023; (ii) the estimated terminal year EBITDA of BorgWarner; and (iii) the individual inputs and assumptions underlying the discount rates of 6.25% to 7.25%.

40. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of BorgWarner, the Proxy fails to disclose: (i) EBITDA estimates for BorgWarner for each of the fiscal years 2021 to 2023; and (ii) the individual inputs and assumptions underlying the discount rate of 8.3%.

41. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of the combined company, the Proxy fails to disclose: (i) estimates of unlevered free cash flow for the combined company for the last three quarters of 2020 and the years 2021 through 2023; (ii) the estimated terminal year EBITDA of the combined company; and (iii) the individual inputs and assumptions underlying the discount rates of 6.25% to 7.25%.

42. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of the combined company, the Proxy fails to disclose: (i) EBITDA

estimates for the combined company for each of the fiscal years 2021 to 2023; and (ii) the individual inputs and assumptions underlying the discount rate of 8.3%.

43. Without such undisclosed information, Delphi stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

44. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Opinion of Goldman Sachs" and "Delphi Technologies Unaudited Prospective Financial Information."

***Material Omissions Concerning the Background of the Proposed Transaction***

45. The Proxy fails to disclose material information concerning the background of the Proposed Transaction.

46. The Proxy fails to disclose whether Delphi entered into confidentiality agreements with potential counterparties identified in the Proxy as "Party A" and "Party B" and, if so, whether the confidentiality agreements include "don't-ask,

don't-waive" standstill provisions that are presently precluding these potential counterparties from submitting a topping bid for the Company.

47. The disclosure of the terms of these confidentiality agreements is crucial to Delphi stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

48. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy "Background of the Transaction."

49. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's, BorgWarner's and the pro forma company's financial projections, the financial analyses performed by Goldman, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56. Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of Delphi within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Delphi, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

60.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Delphi's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Delphi, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 12, 2020

WEISSLAW LLP

By *s/ Richard A. Acocelli*
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*